168 April 30, 2025 No. 375

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

HAZELWOOD STATION APARTMENTS,
*Plaintiff-Respondent,*

*v.*

Leroy SIGLER
and all others,
*Defendant-Appellant.*

Multnomah County Circuit Court
23LT21073; A183258

Mark Allen Peterson, Judge pro tempore.

Submitted April 1, 2025.

Leroy Sigler filed the brief *pro se*.

Charles A. Kovas filed the brief for respondent.

Before Ortega, Presiding Judge, Lagesen, Chief Judge, and Hellman, Judge.

LAGESEN, C. J.

Vacated and remanded.

**LAGESEN, C. J.**

In this residential forcible entry and detainer (FED) case, tenant appeals a general judgment evicting him from the apartment in which he had resided for nearly 20 years. The trial court entered judgment in favor of landlord based on its determination that tenant had knowingly and intelligently entered a settlement agreement with landlord under which tenant agreed to move out of his apartment. Because that settlement agreement, on its face, contains indicia of unconscionability, in accordance with ORS 90.135, we vacate and remand for the trial court to determine whether the settlement agreement is unconscionable under that provision.

Oregon's Residential Landlord Tenant Act protects both tenants and landlords from unconscionable agreements. The unconscionability provision is drawn from section 1.303 of the Uniform Residential Landlord and Tenant Act. *See Zemp v. Rowland*, 31 Or App 1105, 1109, 572 P2d 637 (1977), *rev den*, 282 Or 537 (1978). Currently enumerated ORS 90.135, it provides that if the court determines that

> "[a] settlement in which a party waives or agrees to forgo a claim or right under this chapter * * * was unconscionable when made, the court may refuse to enforce the settlement, enforce the remainder of the settlement without the unconscionable provision, or limit the application of any unconscionable provision to avoid an unconscionable result."

ORS 90.135(1)(b). When the issue of unconscionability is raised either by a party or by the court on its own initiative, the statute sets forth a process for addressing the issue: "If unconscionability is put into issue by a party or by the court on its own motion the parties shall be the afforded a reasonable opportunity to present evidence as to the setting, purpose and effect of the * * * settlement to aid the court in making the determination." ORS 90.135(2). As the comment to section 1.03 of the Uniform Residential Landlord and Tenant Act explains, the purpose of the provision is to ensure that courts are policing explicitly whether rental agreements, related settlement agreements, and similar agreements are unconscionable:

"This Section, adapted from the Uniform Commercial Code and the Consumer Credit Code, is intended to make it possible for the courts to police explicitly against rental agreements, clauses, settlements, or waivers of claim or right which they find unconscionable. This section is intended to allow the courts to pass directly on the issue of unconscionability and to make a conclusion of law as to unconscionability. The basic test is whether, in light of the background and setting of the market, the conditions of the particular parties to the rental agreement, settlement or waiver of right or claim are so one-sided as to be unconscionable under the circumstances existing at the time of making the agreement or settlement. Thus, the particular facts involved in each case are of utmost importance since unconscionability may exist in some situations but not in others. Either landlords or tenants may, in appropriate circumstances, avail themselves of this section."

Uniform Residential Landlord and Tenant Act § 1.303 comment, 7A ULA 499, 517 (1978).

In this case, the parties' settlement agreement, which we have reproduced as an appendix to this opinion, has sufficient indicia of unconscionability to require further exploration of that question in the trial court under ORS 90.135. Although tenant has not explicitly raised that issue, the text of ORS 90.135(2), along with the comment to the provision in the uniform act from which it is drawn, expressly provide that unconscionability is an issue courts can raise on their own motion, and it would be contrary to that statutory directive to disregard questions of unconscionability that appear on the face of an agreement. And this agreement raises several concerns of unconscionability, especially as applied to a long-term tenant.

Specifically, Oregon law restricts the circumstances under which a landlord can terminate a tenancy that lasts more than a year, generally requiring demonstration of cause and compliance with applicable processes. ORS 90.427(3)(c). The settlement agreement, as structured, would appear to allow a landlord to avoid demonstrating cause and to circumvent applicable processes, effectively depriving a tenant of the tenant's rights. First, the agreement does not specify what dispute the parties settled, creating the risk that

the agreement may have resulted from coercive conduct by landlord. Second, while the agreement purports to settle all of tenant's claims, it does not reciprocally settle any of landlord's claims; rather, it simply releases tenant from any future rent obligations. Most concerningly, the settlement contains a one-sided confidentiality clause that prohibits tenant from discussing the settlement or the events that led to it: "Tenant agrees that the terms of this settlement are confidential and agree [*sic*] that this agreement and its terms will not be disclosed to any third party for any reason, nor shall Tenant communicate in any form matters relating to its tenancy or any events that lead to this agreement." That provision, if accepted on its terms, would prohibit tenant from seeking legal advice in connection with the agreement (once signed) or from disclosing facts about a landlord or building's habitability even when there is a public interest in disclosure. Not only would the agreement prohibit tenant from talking about his circumstances, it also subjects tenant to a minimum amount of liquidated damages of $2,000, while affording no comparable protection to tenant for disclosures made by landlord. Those concerns are heightened on the facts of this case, where the record indicates that tenant is unable to read and write on his own and signed the agreement without legal advice.

Accordingly, having raised the issue of unconscionability on the court's own motion, we vacate and remand to the trial court to conduct further proceedings in compliance with ORS 90.135.

*Vacated and remanded.*

# APPENDIX

## SETTLEMENT AGREEMENT

OWNER: Hazelwood Station ("Owner")

RESIDENT: LeRoy Sigler ("Resident")

PREMISES ADDRESS: Unit # 208 ("Property")
14715 E Burnside St #208

VACATE DATE: 11/30/2023 Portland, OR 97233

This Mutual Lease Termination and Settlement Agreement ("Agreement") is made and entered into between Resident and Owner, its owners, Management Company, employees, agents, attorneys and assigns (collectively "Owner") on this 26 day of October, 20 23. Landlord and Tenant entered into a residential lease agreement ("Lease") to lease the Property. Through this Agreement, the parties hereby terminate the Lease and settle all claims as follows:

1. **Settlement Payment.** Owner agrees to Resident the amount of $ 5,000 +200.00 DB on or before 30 day of November, 2023. Resident agrees to comply with all obligations under this Agreement, including removal of all personal property on the premises and return of the keys to the premises.

2. **Resident Vacates Unit.** This agreement shall serve as an agreement to terminate the occupancy rights of Resident and the rights of Owner to collect any payment for rent and monthly fees due under the Residential Rental Agreement after the Vacate Date. Resident shall turn over the keys no later than close of business on the Vacate Date. Resident shall be fully out of the unit and have taken all steps to clean and prepare the unit prior to the Vacate Date. It is agreed that if Resident fails to vacate on the Vacate Date, that Resident shall be deemed to be in unlawful detainer. This agreement shall be deemed notice under State law and Resident waives the time requirements of the notice if necessary. Any property left in the unit after the Vacate Date shall be deemed by this agreement to be abandoned by Resident. It is agreed that Owner may dispose of any such abandoned items immediately. Resident agrees that once vacated, it will not enter the property of Owner again for any reason.

3. **Release from Lease.** It is agreed that Resident shall be released from the obligations of the Residential Rental Agreement as to future rent obligations, provided they fully comply with the terms and conditions of this agreement. Resident shall provide to Owner a forwarding address no later than five (5) days after the Vacate Date.

4. **Settlement of Claims.** This agreement shall be a settlement of any and all claims, known or unknown, of Resident, which may exist as of the date of this agreement.

5. **Security Deposit.** The parties agree that the security deposit shall be handled under State law. Owner shall return the full refundable portion of the security deposit provided that there is no damage to the property beyond normal wear and tear or any rental arrears.

6. **Confidentiality.** Tenant agrees that the terms of this settlement are confidential and agree that this agreement and its terms will not be disclosed to any third party for any reason, nor shall Tenant communicate in any form matters relating to its tenancy or any events which lead to this agreement. Tenant agrees to not disclose to any person at any time any information relating to Landlord or this agreement. It is further agreed that Tenant and all occupants shall not utilize any website or social media to negatively discuss its tenancy, Landlord, or this agreement. A breach of this provision shall entitle Landlord to recover

from Tenant such sums as may be deemed actual damages from the breach and an agreed amount of liquidated damages equal to a minimum of two thousand dollars ($2,000.00). If breached, Tenant shall be responsible for court costs and attorney fees.

THE UNDERSIGNED HAS READ AND VOLUNTARILY SIGNS THIS AGREEMENT AND AGREES THAT NO ORAL REPRESENTATIONS, STATEMENT OR INDUCEMENTS APART FROM THIS WRITTEN AGREEMENT HAVE BEEN MADE.

RESIDENT                                    DATE    10-27-23

OWNER                                       DATE    10-26-23

Page 9